WOODS, Circuit Judge,
after making the foregoing statement, delivered the opinion of the court.
The allegation in the bill that, in equity and good conscience, the agreements of sale and repurchase constitute a mortgage is at most only the statement of a legal conclusion, and whether tenable need not be considered, because it has not been relied upon in the argument here. The propositions asserted in the brief for the appellants are that the trust company, as a mortgagee, was bound to deal fairly with its debtor, and that its purchase of the equity of redemption will be set aside if -consummated by oppressive or other unfair means; and that Walsh, being a partner of the appellants, was bound to exercise towards them the utmost good faith. The necessary implication is that the agreements are what they purport to be, contracts of purchase and of resale, and not the mere substitution of one form of pledge or security for another, and the contention is that they ought to be set aside because obtained by oppressive and fraudulent means. But, assuming that the averments are otherwise sufficient, the bill does not show a case for relief on that theory, because it is not alleged that the necessary steps were taken or offers made, before the *177 bringing of the suit, to place the parties in statu quo. The rule in that regard is too familiar to need restatement. The making of the agreements in question worked essential changes in the situation of the parties. Frior contracts were annulled. Instead of pledgee the trust company became owner. It released the appellants from personal obligation on the demands then held by. it, and in addition bound itself to pay §65,000 to Voris. Walsh was released from liability, and at the same time surrendered his rights under the alleged agreement of partnership. To be entitled to a cancellation or rescission of the agreements it was therefore necessary that the appellants, before bringing the suit, should themselves have offered to cancel the agreements, should have returned or offered to return to the trust company the Breyfogle notes which had been surrendered, and have' repaid or offered to repay to that company, with interest, whatever sums it had paid to Voris or otherwise had expended. They could not treat such sums as an addition to their debt to the trust company, and so retain a benefit from the agreements which they sought to have rescinded.
It follows that, if the appellants can have any relief upon this bill, it must be upon the assumption that the contracts of June <8, 1894, were valid and became conclusive of the status and rights of the parties at that time. We are of opinion that a case for relief on that theory is shown. The agreement for the resale of the property to appellants contains the harsh, though not illegal, provision that time shall be of the essence of the contract; and we quite agree with the proposition in the brief for appellants that, even had there been no promises by the trust company and Walsh that they would not interfere with efforts of the appellants to dispose of the property in order to obtain the money necessary to pay the purchase price as stipulated, it would have been bad faith on the part of Walsh to interrupt, as he is alleged to have done, the negotiations with Harvey Fisk & Sons, and, if by that or other like means the performance of the contract by the appellants within the required time was prevented, it ought not to be beyond the power of a court of equity to extend the time within which the purchase price should be paid. Whether in such a case, when the parties had dealt at arm’s length, equity would interfere, is not the question presented. The case here is different. There had been previous relations between the parties, as it is alleged, of partnership and of mortgagor and mortgagee. It is shown that the purpose of Walsh and of the trust company was deceitful from the beginning; that, in order to induce the appellants to enter into the agreements, they made representations of their wishes and aims concerning the property which were false; that they made promises which they intended not to keep; and that the subsequent interference with the efforts of the appellants to dispose of the property was in pursuance of a conspiracy long before entered upon to cheat the appellants by forcing them to part with the property at a price greatly less than its alleged value. If the facts in this respect were as charged, there ought to be no question of the power of the court to give relief, both against Walsh and against the trust company represented by him in the transac *178 tion. Not in justice or common honesty, nor upon any consideration oí public policy, can a corporation, whether private or quasi public, like a trust company or a national bank, be allowed immunity for participation in a fraud, and, in such a case as this, it is immaterial whether the corporate participation was the result of action by a board of directors or by a president or other officer in actual and presumably authorized control.
It is urged on behalf of the appellees that, the contracts between the parties having been reduced to writing, all oral promises by Walsh and by the trust company are merged in the agreements, and are not to be considered. The general rule on the subject is familiar, and likewise the exception from the rule of purely collateral contracts, which may be left in parol; but the question here is not of the obligatory force of the alleged promises as such, but what do they show of the good or bad faith of the parties in the transaction in connection with which they were made and in their subsequent conduct? On that point whatever was said and done by Walsh, representing, as he did, the trust company, was clearly relevant and competent.
One form of appropriate relief, if the bill should be sustained by the proof, manifestly would be an extension of time beyond the date of the decree for the payment of each installment of the purchase price, with interest, according to the contract; and, if additional sums are found to be due, the payment thereof should also be required. The time allowed should be reasonable,—perhaps equal to but not greater than was originally agreed upon by the parties. Whether relief could be made effective in some other form, upon the theory of constructive trust, for instance, as defined in section 1053, Pom. Eq. Jur., quoted in Angle v. Railway Co., 151 U. S. 1, 27, 14 Sup. Ct. 240, has not been discussed by counsel, and need not now be considered. The decree below is reversed, with direction that the respective demurrers of Walsh and the Equitable Trust Company to the amended bill be overruled, and that further proceedings be had in accordance with this opinion.